### ELIZABETH O. LOUD *vs.* EPHRAIM A. LOUD.

Suffolk.     March 28, 29, 1879. — June 24, 1880.   AMES & LORD, JJ., absent.

A wife who has appeared in a suit for divorce brought by her husband against
her in another state, in which a decree is rendered in his favor, and who sub-
sequently executes a release reciting the divorce therein obtained, and for a
pecuniary consideration discharging all her claims against him and his estate,
cannot, after his subsequent marriage and cohabitation with another woman,
maintain a libel for divorce therefor against him in this state, on the ground
that the court in the other state had no jurisdiction of his libel, without prov
ing that he went to that state for the purpose of procuring a divorce.

LIBEL for divorce for adultery on and since March 18, 1878.
Answer, a decree of divorce, obtained by the libellee in the Su-
preme Judicial Court of the State of Maine, October 4, 1877,
after service of process upon and appearance of this libellant;
and a release from her of all rights of dower and alimony and
other claims upon him.    Hearing before *Lord*, J., who reported
the case in substance as follows:

The parties were married on November 24, 1870, in Malden
in this Commonwealth, and thereafter lived together as husband
and wife in Boston until March 20, 1877, excepting that in the
summer of 1872 they went to the libellee's father's house at
Plymouth in the county of Penobscot and State of Maine, and
stayed there a week or ten days, and in the summer of 1874 the
libellant went there and stayed three or four months, during
which time the libellee came there twice, and stayed two or
three days each time, and always while there they lived together
as husband and wife.    They had three children, one of whom, a
boy, is still living.    On March 20, 1877, she left her husband's
house in Boston, and filed a libel for divorce against him in this
court, in which he appeared, and which, after hearing, was dis-
missed, without any order as to the custody of the surviving
child.

The libellee soon afterwards took this child, with the libel-
lant's consent, and went to his father's house in said Plymouth,
where the libellee was born and lived until of age, and where
his parents have ever since lived; and on August 14, 1877, filed
against this libellant in the Supreme Judicial Court for the

County of Penobscot and State of Maine, the libel which is copied in the margin.*

Notice thereof was ordered to be served on her personally, and was served accordingly on August 20, 1877. She employed counsel here, who by her direction employed counsel in Maine to appear for her in that suit, and who did appear for her, as shown by the record and docket, and was present at the hearing and took part in the proceedings as her counsel. That court afterwards entered the following decree: " And now the libellant appears, and enters his libel, and proves to the satisfaction of the court that notice had been given, as required by the fore-

---

* " To the Honorable Justices of the Supreme Judicial Court next to be holden at Bangor within and for the County of Penobscot, on the first Tuesday of October, A. D. 1877:

" Ephraim A. Loud, of Plymouth in the County of Penobscot, respectfully libels and gives this honorable court to be informed, that he was married to Elizabeth O. Watts, of Fredericton, Province of New Brunswick, at Malden in the Commonwealth of Massachusetts, on the twenty-fourth day of November, A. D. 1871; that, since their intermarriage, he has always behaved himself toward said Elizabeth as a true, faithful and affectionate husband; that they have frequently cohabited in this state; but that the said Elizabeth, unmindful of her marriage vows as aforesaid, has treated your libellant with extreme cruelty, was very irritable and ill-tempered, causing your libellant great anxiety and trouble in body and mind; that she was in the habit of slandering your libellant in the community in which they lived; and in February last she abandoned your libellant, taking with her their two children (one of which died soon after); that she immediately instituted proceedings for a divorce from your libellant, in the courts of Massachusetts, charging your libellant with extreme cruelty, and further charging your libellant with the crime of adultery; that, on said libel, a hearing was had before Chief Justice Gray, of the Supreme Court of Massachusetts, in the month of May last, who then and there, after hearing your libellant's case, refused to grant a divorce, without calling upon your libellant to make a defence, and ordered the living child to be given to your libellant, which child is now with your libellant at Plymouth aforesaid. And your libellant further represents, that there is no prospect of their ever living together again; that she has declared that she would never live with him again, and that their separation must necessarily be permanent.

" Wherefore, inasmuch as it would be conducive to domestic harmony, and in accord with the peace and morality of society, your libellant prays that a divorce from the bonds of matrimony may be granted between him and the said Elizabeth. And thus in duty bound will ever pray.

" Bangor, August 14, 1877.                    Ephraim A. Loud."

going order; but the said libellee, though called to come into court, fails to appear, but makes default. Now therefore, after hearing all matters relating to said libel, it is considered by the court that the allegations therein set forth are true; and it is ordered and decreed by the court, on the third day of the term, being the fourth day of October, A. D. 1877, that said Ephraim A. Loud be divorced from the bonds of matrimony heretofore existing between him and the said Elizabeth O. Loud."

After that libel had been served upon her, she, through the intervention of friends, consented to withdraw opposition thereto; and agreed to execute, upon receipt of the sum of $3000, and on October 14, 1877, with full knowledge of all the facts, upon the payment to her of that sum, (which she has since retained,) did execute, and acknowledge before a justice of the peace in this Commonwealth, the release which is copied in the margin,* and the same was recorded in the registry of deeds for this county. At the time of such negotiation and receipt, she supposed that that court had jurisdiction of the subject-matter of the libel and of the parties; and such belief was not caused by fraud of this libellee; and both parties supposed that that decree was valid

---

* "Know all men by these presents: That I, Elizabeth O. Loud, of Boston in the County of Suffolk and Commonwealth of Massachusetts, formerly the wife of Ephraim A. Loud, of Plymouth in the County of Penobscot and State of Maine, by whom a decree of divorce was obtained from me in the Supreme Judicial Court of Maine, on the fourth day of October 1877, in consideration of three thousand dollars in money, to me paid by said Ephraim A. Loud, formerly of said Boston, the receipt whereof is hereby acknowledged, do hereby remise, convey, release and forever quitclaim unto the said Ephraim A. Loud any and all right, claim or interest in or to any and all lands or estate now or formerly owned by said Ephraim A. Loud; especially releasing all claims to dower or homestead in or to any and all land or estates now or formerly owned by said Ephraim A. Loud. And in consideration of said three thousand dollars, I do hereby release and discharge said Ephraim A. Loud from all claims for support, and from all claims of alimony, maintenance, and from all claims and demands of every and all kinds; meaning and intending this to be a full release and discharge of said Ephraim A. Loud to me, of all things whatsoever.

"In witness whereof, I, the said Elizabeth Octavia Loud, hereunto set my hand and seal this fifteenth day of October in the year of our Lord one thousand eight hundred and seventy-seven.

"Elizabeth O. Loud.    [Seal.]"

everywhere. She testified, on cross-examination at the hearing of the present case, that she then desired that a decree of divorce should be obtained in the suit in Maine.

On March 18, 1878, this libellee married in the State of Maine another woman, a resident of that state, according to the law of that state, and this marriage was consummated by sexual intercourse, and a few days afterwards they came to Boston, and have since lived together here as husband and wife.

The libellee contended that he did not in 1877 go to the State of Maine to obtain the divorce, or with any purpose to obtain a divorce; and offered evidence tending to show that, when he left Boston and went to Plymouth, Maine, in May 1877, he was sick, and went to his father's house intending to remain there permanently, and that at the time of filing his libel he had acquired a domicil in Plymouth.

But the judge found, as a fact, that the libellee was, during the whole year 1877, domiciled in and a citizen of this Commonwealth, and did not acquire a domicil in or become a citizen of the State of Maine; and ruled, as matter of law, that this finding rendered wholly immaterial the question whether the libellee, when he went to Maine, had a purpose to obtain a divorce.

The judge also found, subject to the libellee's objection to their competency, the following facts: 1st. The parties to this suit were not married in the State of Maine. 2d. They had not cohabited together as man and wife in that state, within the meaning of the Rev. Sts. of Maine of 1871, *c.* 60, § 2.* [See *Calef* v. *Calef*, 54 Maine, 365.] 3d. The husband had not resided in the State of Maine during the year preceding the filing of his libel, nor during any year after their marriage. 4th. The causes of divorce alleged in that libel did not accrue in that state.

---

* "A divorce from the bonds of matrimony may be decreed by the Supreme Judicial Court, in the county where either party resides at the commencement of proceedings, when the judge deems it reasonable and proper, conducive to domestic harmony and consistent with the peace and morality of society, if the parties were married in this state, or cohabited here after marriage, or the libellant resided here when the cause of divorce accrued, or had resided here in good faith one year prior to the commencement of proceedings."

It was agreed that the acts of the Legislature and the decis ions of the Supreme Judicial Court of Maine might be referred to by either party ; that if in the opinion of the full court the judge's construction of the meaning of cohabitation was not in accordance with the law of Maine, the finding upon that fact should be reversed ; and that if, upon the facts and findings above stated, so far as competent, the libellant was entitled to a decree of divorce, such decree should be entered; otherwise, the libel should be dismissed.

*W. Gaston & C. E. Hubbard,* for the libellant.

*E. R. Hoar & J. B. Richardson,* for the libellee.

GRAY, C. J. This case differs from that of *Sewall* v. *Sewall,* 122 Mass. 156, in three respects : 1st. It has not been found that the husband went to the State of Maine to obtain a divorce, in violation of the Gen. Sts. *c.* 107, § 54. 2d. The wife had notice of his libel in Maine, and appeared by counsel in answer thereto. 3d. She executed to him a release, reciting the decree of divorce obtained by him from her in Maine, and, in consider-ation of a sum of money paid by him to her, releasing all right of dower or homestead or other interest in his lands, and dis-charging him from all claims for alimony, support or mainte-nance, and all other claims whatsoever.

Whether, no violation of our statutes being shown, and the wife having appeared in the suit in Maine, it would, if she had done nothing more, have been open to her to impeach the valid-ity of the decree of divorce obtained there, by proving that her husband's domicil continued to be in this Commonwealth, is a question upon which there has been some difference of judicial opinion, and which we are not now required to decide. See Gen. Sts. *c.* 107, §§ 54, 55 ; *Chase* v. *Chase,* 6 Gray, 157 ; *Jack-son* v. *Jackson,* 1 Johns. 424 ; *Sanford* v. *Sanford,* 5 Day, 353 ; *Kinnier* v. *Kinnier,* 45 N. Y. 535 ; *People* v. *Dawell,* 25 Mich. 247 ; *Donegal* v. *Donegal,* 3 Phillim. 597 ; *Chichester* v. *Donegal,* 1 Addams, 5 ; *Zycklinski* v. *Zycklinski,* 2 Sw. & Tr. 420 ; *Call-well* v. *Callwell,* 3 Sw. & Tr. 259 ; *Garstin* v. *Garstin,* 4 Sw. & Tr. 73 ; *Shaw* v. *Gould,* L. R. 3 H. L. 55 ; 2 Bishop Mar. & Div. (5th ed.) §§ 144, 163 *a.*

The conclusive answer to this libel is, that the wife not only appeared in the suit brought by the husband, but that she

afterwards executed a release, reciting the divorce therein obtained by him, and for a pecuniary consideration discharging all her claims upon him or his estate. Having done this, she cannot treat his subsequent marriage and cohabitation with another woman as a violation of his marital obligations to herself. The defence is allowed, not upon the ground of a strict estoppel, but because her own conduct amounts to a connivance at, or acquiescence in, his subsequent marriage. *Kirrigan* v. *Kirrigan,* 2 McCarter, 146. *Palmer* v. *Palmer,* 1 Sw. & Tr. 551. *Boulting* v. *Boulting,* 3 Sw. & Tr. 329, 335. *Gipps* v. *Gipps,* 3 Sw. & Tr. 116, and 11 H. L. Cas. 1. *Pierce* v. *Pierce,* 3 Pick. 299. *Lyster* v. *Lyster,* 111 Mass. 327, 330. See also *Smith* v. *Smith,* 13 Gray, 209, in which the point decided was that a decree of divorce, obtained in another state, *ex parte,* and in violation of the Gen. Sts. *c.* 107, § 54, was no bar to a libel previously filed in this Commonwealth by the same libellant for the same cause.

*Libel dismissed.*