BESSIE HOROWITZ *vs.* WILLIAM HOROWITZ.

JULY 1, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This case is before the court upon the exception of the petitioner to the decision of a justice of the superior court granting the respondent's motion to dismiss a petition for divorce.

On December 15, 1934, Bessie Horowitz filed a petition for divorce from bed, board and future cohabitation, on the ground that the respondent had been guilty of gross misbe-

havior, repugnant to and in violation of the marriage covenant. The petition is unusual in that it sets out numerous allegations as to the history of the relationship between the parties, chief among which is the allegation that a final decree in a Nevada divorce previously *obtained by the petitioner* was void because of the fraudulent representations by the respondent as to his residence in Nevada. These allegations will be further considered by us in connection with the evidence in this case.

The respondent moved to dismiss the petition on various grounds which may be summarized as follows: (1) The Nevada divorce decree is entitled to full faith and credit in Rhode Island; (2) even if not entitled to full faith and credit as a matter of right, such decree should be recognized and given legal effect in Rhode Island as a matter of comity; (3) no attack may be made in Rhode Island on that decree on the ground that a fraud was perpetrated on the Nevada court; (4) the petitioner may not now question the validity of a divorce decree which she herself procured and upon which both parties have relied and acted under for two years. At the hearing of this motion to dismiss in the superior court, the respondent introduced in evidence, without objection, a complete and certified copy of the proceedings in the divorce case between these parties in Nevada.

The record before us discloses the following facts. The parties were married in the city of New York on May 26, 1914, and later moved to Providence. Three children were born of this marriage and they are now in the custody of the petitioner.

On May 27, 1930, the petitioner commenced an action against the respondent in the superior court for the county of Providence in this state for divorce from bed, board and future cohabitation. One of the grounds alleged in that petition was gross misbehavior on the part of the respondent in the same particulars relied upon in the present petition. The petition of May 27, 1930, was denied and dismissed by a justice of the superior court, and the petitioner's

exceptions to such decision were overruled by this court in an opinion reported in 158 A. (R. I.) 726.

On June 20, 1932, the present respondent brought a complaint for absolute divorce against his wife in Nevada on the ground of extreme cruelty. The present petitioner went to Nevada with a Rhode Island attorney and, after engaging local counsel, entered her appearance in the divorce proceedings pending against her in that state. She then filed an answer under oath in which she denied that her husband was a resident of Nevada and prayed that his complaint be dismissed for that and other reasons. Later, in an "amended answer and *cross-complaint*," also under oath, she herself asked for an absolute divorce from the complainant on the ground of willful desertion, alleging in the cross-complaint that her husband had been a resident of Nevada for the required statutory period, that during such time he had been physically present in the state, and that he was a domiciled resident of Minden, Nevada. Upon this record the Nevada court found as a fact that William Horowitz had been a *bona fide* resident of that state for the required period, and further specially found as a matter of law that the court had jurisdiction over the parties and the subject-matter in suit. Upon these findings that court entered a decree on December 2, 1932, denying the complaint of William Horowitz and granting the cross-complaint of Bessie Horowitz, the petitioner in the instant case. The decree also gave Bessie Horowitz custody of the minor children with an allowance of $45 a week for their support, and further awarded her the sum of $57 a month as permanent alimony.

On September 12, 1933, William Horowitz remarried. It is undisputed that from and after the entry of the Nevada decree of December 2, 1932, William Horowitz has fully complied with the provisions of that decree respecting the payments therein ordered.

In the case at bar, we deem it unnecessary to consider the first three grounds of the respondent's motion to dis-

miss the present petition, as in our judgment the fourth ground of that motion is decisive of the case. This fourth ground for dismissal is that the petitioner is precluded from questioning the validity of the Nevada decree which she procured and upon which both parties have relied and acted for two years.

The petitioner in the instant case charges that a fraud was committed on the Nevada court, in that neither of the parties to those divorce proceedings ever truly resided in that state. It is clear from the record before us that, if the fraud now claimed by the petitioner was in fact perpetrated on the Nevada court, she herself knowingly and advisedly, participated in that fraud for her own purposes and advantage. She went to Nevada of her own free will with a Rhode Island attorney and subsequently also employed local counsel to assist her. Thereafter she voluntarily submitted herself to the jurisdiction of the Nevada court and, upon *her* cross-complaint, secured a final decree for divorce from that court, with an order for substantial payments for herself and children, which payments she has ever since received and accepted. There is no evidence in this case that the petitioner was fraudulently induced or coerced in any way by the respondent in acting as she did.

Our opinion in *McGraw* v. *McGraw*, 48 R. I. 426, reflects the attitude of this court in a case where a successful petitioner in a divorce case, who has participated in a fraud upon the court, later seeks to vacate a final decree in her favor on the ground of lack of jurisdiction. This court there held that one, not free from fraud, who has voluntarily invoked the assistance of this court and has obtained a final decree of divorce in her favor, will not be heard later to question the jurisdiction of the court. We see no reason for applying a different rule in the instant case. The facts before us clearly establish that, if fraud was practiced on the Nevada court, the petitioner was not a defrauded party but was an active participant in the fraud about which she now complains.

If, under these circumstances, the petitioner desires to raise the issue of fraud, justice to all parties concerned demands that such issue be presented to the tribunal upon which the fraud was actually practiced. A party to a divorce case who, in order to secure a decision from a court of competent jurisdiction, has knowingly participated in a fraud upon the court will not be heard by us to question the validity of a decree that has been secured under such conditions.

The principle of law applicable to cases of this kind is well stated in *Bledsoe* v. *Seaman,* 77 Kan. 679, where, in an action for alienation of affection, involving the validity of a South Dakota divorce, the court says: "A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction, either of the subject-matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated. People who invoke the action of a court, and, through negligence or falsehood, mislead the court as to the existence of the facts upon which its jurisdiction depends, and obtain a judgment for relief, will not afterward be heard to deny the validity of such judgment." Other jurisdictions arrive at the same result upon similar considerations of policy or estoppel. *Curry* v. *Curry,* 79 Fed. (2d) 172; *Starbuck* v. *Starbuck,* 173 N. Y. 503; *Ferry* v. *Ferry,* 9 Wash. 239; *Ellis* v. *White,* 61 Ia. 644; *Elliott* v. *Wohlfrom,* 55 Cal. 384; *Langewald* v. *Langewald,* 234 Mass. 269.

The petitioner relies strongly upon the decision in *Hollingshead* v. *Hollingshead,* 91 N. J. Eq. 261. In that case the wife had secured a Nevada divorce with a lump sum payment in cash as alimony. The husband subsequently remar-

ried and she lost a part of the alimony money in an investment. She subsequently filed a petition for divorce in New Jersey, praying that, upon her returning the balance of the alimony money, her former husband be ordered to support her as his wife, alleging that the Nevada court was without jurisdiction in entering its decree in the divorce case which was heard in that state. The New Jersey court decided in her favor only after it found as a fact that the husband caused the wife to act in Nevada against her wishes and as a direct result of *his* fraud and coercion. In effect, the New Jersey court found that the wife's acts in Nevada were in fact the acts of the husband. The opinion in that case expressly states that, in the absence of such fraud and coercion on the part of the husband, it might well be that either colluding party should be denied relief as being in *pari delicto*. In the case at bar, there is not the slightest suggestion that the petitioner was induced to act as she did in Nevada by any fraud or coercion practiced upon her by her husband. To claim that the *Hollingshead* case is an authority in support of the petitioner in the instant case is to ignore the distinction that the New Jersey court clearly indicated in its opinion in that case.

The record before us shows that no one was deceived by the voluntary acts of these parties in Nevada, unless it was the Nevada court. In the circumstances, the petitioner's claim is entirely without merit.

The petitioner's exception is therefore overruled and the case is remitted to the superior court for further proceedings.

*Pettine, Godfrey & Cambio, Gerald L. Bronstein,* for petitioner.

*Hinckley, Allen, Tillinghast & Wheeler, Herman J. Aisenberg, Chauncey E. Wheeler, Harold B. Gross,* for respondent.